## Audie Christie v. State.

### No. 2340. Decided March 19, 1913.

**1.—Murder—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained a conviction of murder in the first degree, there was no error.

**2.—Same—Alibi—Charge of Court.**

Where, upon trial of murder, the defense was an alibi, and the court properly submitted this issue, there was no error; the evidence sustaining the conviction.

**3.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of murder, the qualification of the bills of exception by the trial judge showed that the court did not err in sustaining the State's objection to defendant's questions to the State's witness as to whether he was the witness in certain prosecutions for selling liquor, there was no error; besides, the bill of exceptions was defective.

**4.—Same—Evidence—Shorthand Facts.**

Upon trial of murder, there was no error in admitting testimony as to the opinion of the witness that a person standing at a certain place could have shot the deceased, the same being merely a shorthand rendition of the facts; besides, the same facts were proved by other witnesses without objection. Following Wagner v. State, 53 Texas Crim. Rep., 306, and other cases.

**5.—Same—Evidence—Repetition.**

Where, upon trial of murder, the record showed that the alleged examination of the witness was a mere repetition of what the witness had already testified to, there was no error in sustaining objections by the State thereto.

Appeal from the District Court of Houston. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Adams & Young,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—Appellant and his brother, Jewell Christie, were jointly indicted and jointly tried for the murder of

Dock Durham, alleged to have been committed on February 10, 1912. Jewell Christie was acquitted; Audie, appellant, was convicted of murder in the first degree, and his penalty fixed at confinement for life in the penitentiary.

Appellant's main contention is, that the evidence is insufficient to sustain the verdict. He claims that the evidence was as strong against Jewell as himself, and as Jewell was acquitted, the case should be reversed as to him.

We have carefully read and studied the whole of the evidence. In our opinion the evidence is amply sufficient to sustain the verdict against appellant, and is nothing like as strong against Jewell as against him.

It is unnecessary to detail the evidence. We will give a brief synopsis of the material part of it. Deceased was the uncle of appellant; they lived near one another in the same community. About two months before the killing the son of deceased had a fight with Jewell Christie, if not with both him and appellant. In this fight deceased's son cut Jewell, but Jewell recovered from his injuries. The deceased on one occasion, if not more than one, attempted to make friends with appellant and try to get him especially to drop the difficulty. Appellant expressly refused to do this, claiming that while deceased's son was in the fight and cut his brother, yet the deceased himself was back of it and to blame for it. Deceased was an elderly man; appellant a young man.

Deceased was assassinated by being shot at night through a window by some one who, it was clearly shown, stood in some fifteen or twenty feet from the window at the time the shot evidently was fired. The killing occurred at the home of a neighbor by the name of Harris, at whose house there was to have been a dance that night. Late in the evening the son of Mr. Harris invited appellant and his brothers and sisters to the party. They declined to attend, claiming that because of the absence of their father and mother appellant and his family had to stay with his brothers and sisters. When invited, however, he asked if the deceased had been invited and would attend. Young Harris told him that he had not invited him, but that his father might have done so, and the inference is that appellant got the information or concluded that the deceased would attend the party. The deceased was not instantly killed, but lived for several hours after being shot, though was unconscious from the time he was shot until he died. Soon after the shooting the officers were informed of it, and the sheriff and one or more of his deputies and others went to the house where deceased had been shot. Shortly before day-light one of the deputies, who was unfamiliar with the localities and the residences of the various persons living in the community, but made inquiry at the time, and was informed who lived at the respective houses in the neighborhood, started out to see what he could hear and learn as to who the assassin was. He went from the house where deceased had been shot

to several houses in the immediate vicinity, but upon approaching some of them he saw no light therein and heard no one moving about or talking, and passed on until he came to the house of appellant. There he found, just before day-light, that there was a light in appellant's house, and that persons were up and moving about and talking therein; he heard the voice of a woman and that of a man; he approached quite near to the house and heard some one of "the boys," as he expresses it, therein say, "I would like to know if Uncle Dock is dead." The deceased, as stated above, was named Dock Durham, and was the uncle of appellant and his brothers and sisters, and they called him Uncle Dock.

The day before the night of the killing appellant is shown to have worn a certain pair of shoes. One of these shoes had tacks projecting from the sole, and with it a certain track that could be and was un-·questionably identified was made by the shoe. The next morning after the killing the night before, as soon as it became light enough to do so, the sheriff and said deputy sheriff and others undertook to learn where the party who did the killing stood, or was at the time of the shooting, and to track such person to and from this place. They thereupon found, right near the house where deceased was when he was shot, where some person or persons had stood and tramped around considerably at three distinct places; the farthest from the house was at an old outhouse some thirty yards from the window through which deceased was shot. The next place was some fifteen yards nearer, behind a large tree; the next place was at the fence some fifteen or twenty feet from the window through which the deceased was shot. These tracks were traced from towards appellant's house to these three respective places, and from the last, or one nearest the window through which deceased was shot, they tracked these tracks made by this particular shoe to appellant's house. They went in this house then, found these shoes under appellant's bed, took the shoes and fitted them to the said tracks, and they fit exactly. In other words, the witnesses testify positively that the tracks where the party stood, and from there to appellant's house, were made by this shoe, and that they fitted exactly. In appellant's house was also found a shotgun which had, as the witnesses testify, been recently shot, and with small buckshot. Deceased was shot with small buckshot.

While the sheriff and others who testified about the tracks showed that there were two tracks, one of the shoes of the other party made a peculiar track, and that while they hunted for shoes of Jewell Christie, they could find no shoe of his that would make this peculiar track. Only one shot was fired. Jewell was shown not to have a shotgun but a rifle. The evidence in no way identified or connected Jewell with certainty with the killing.

Neither appellant nor Jewell testified. Their defense was alibi. They had two of their sisters, and the wife of appellant to testify, which, if believed, would have probably established an alibi for both

of them. This question was submitted properly by the court to the jury, and the jury found against appellant on this issue.

As stated above, the evidence is amply sufficient to sustain the conviction of appellant.

Appellant has but three bills of exception. His first bill, after the usual style of the cause and heading, says: "When C. J. Hunt was on the stand as a witness for the State, and had disclosed the fact that he was a resident of a distant county, and an entire stranger in this county, and counsel for defendants were seeking by questions to show who and what said witness was, and after said witness has remained silent and refused to answer such questions, the defendants' counsel asked said witness: 'Will you say that you are not a witness on the indictments against those different defendants for selling liquor?' to which the State objected because immaterial, and the court sustained such objection, to which defendant excepted." This is the whole of the bill except that then follows appellant's contention and reasons why he should have been permitted to ask said question and require an answer from the witness, to this effect: "Because it was a right, in cross-examination, to prove everything about the witness, and such testimony was material because by it would be shown that such witness was seeking to convict certain persons, and combination by him could be argued to secure evidence for his cases, by giving evidence in this case, and the defendant, if said evidence had been admitted, could have proven who were the other witnesses in such case, and if the prosecuting witnesses in this case were the prosecuting witnesses in the liquor cases, then it was strong evidence that there was such combination, but the court by its ruling closed all inquiry on this line."

The court in allowing this bill qualified it by stating that appellants' said argument or reasons why they should have been permitted to answer said question were for the first time presented to him by this bill long after the trial and the adjournment of the court for the term. Besides, the judge states fully in his qualifications the whole of the testimony of the witness on this point, and the ruling of the court, and the reasons therefor, which clearly show that no reversible error was committed by the court in sustaining the State's objection to said question as shown by said bill.

Another bill by appellant, after the style of the case and the usual heading, is "that on the trial of this case the court permitted C. J. Hunt to give it as his opinion that a person standing at a certain place designated could have shot Durham, the deceased, through a window." To which defendant objected because witness should have stated the different positions, and let the jury judge as to ability of one standing at such designated place to shoot Durham. But the court overruled the objection, and defendant excepted, and now tenders his bill.

This bill, as the other just above passed upon, was clearly insuffi-

cient to require this court to review the questions attempted to be raised thereby. However, the court qualified this bill by showing fully that the witness did testify on this point, and clearly from it what he testified as objected to by the bill was merely a shorthand rendition of the facts so detailed by the witness, and no error whatever is shown by this bill. In addition to this, the State proved precisely the same thing by Mr. Phillips, the sheriff, without objection whatever by appellant. "It is well settled in this State that the erroneous admission of testimony is not cause for reversal if the same fact is proven by other testimony not objected to." Wagner v. State, 53 Texas Crim. Rep., 306, and cases there cited; West v. State, 2 Texas Crim. App., 460; Bailey v. State, decided at the present term.

No error whatever is shown by appellant's other bill of exceptions, wherein he claims that the court would not permit him to pursue the examination of the witness Sullivan on a point that the court clearly shows by the qualification of the bill and the quotation in full of the testimony of the witness on this point, that the point had been gone over and threshed out thoroughly, and the attempted continuation of the examination was a mere repetition of the same thing.

The judgment is affirmed. 　　　　　　　　　　　　　　　*Affirmed.*