**Sheree PAPES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46004.**

Court of Criminal Appeals of Texas.

March 21, 1973.

Rehearing Denied June 6, 1973.

---

8. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

Henry Taylor, Jr., Temple, for appellant.

Joe Carroll, Jr., County Atty., Bill Bachus, Asst. County Atty., Belton, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted for the offense of aggravated assault under Article 1147, Sec. 5, Vernon's Ann.P.C., which provides that:

"An assault or battery becomes aggravated—(5) when the instrument or means used is such as inflicts disgrace upon the person assaulted . . .."

The jury assessed the punishment at one year imprisonment in jail. This appeal is taken from the conviction.

Initially, appellant attacks the sufficiency of the evidence.

The record reflects that approximately a week prior to the commission of the offense herein, the prosecutrix and Dave Papes, the former husband of appellant, were spending the night together in a motel room in Temple. The appellant knocked on the door of the motel room and was admitted inside where she and the prosecutrix began fighting. They were separated by Dave Papes and the prosecutrix left the premises.

On March 28, 1971, the date of the instant offense, the 17 year old prosecutrix went to Laurie Darby's house to attend a party. Laurie Darby, Cassie Shannon and Barbara Ellis had invited her to the party. Shortly after the prosecutrix arrived at the house, the appellant and two other persons arrived. The appellant was wearing a wig and the prosecutrix did not recognize her at that time. Upon being urged to do so by Laurie Darby, the prosecutrix began recounting the events of the fight that she had with appellant at the motel. The prosecutrix testified:

". . . So we was all talking, and you know, Laurie said, 'Well, did you know that this is Sheree?' and Sheree had had a coat on, you know, and she had her hand in a pocket and she pulled out a gun and she said, 'Yes, and I'm fixing to blow your head off.'

Q. How did you react to this?

A. I was, you know, just shocked, and I was scared. And she walked over there and she put the gun in my eyes and she said something, you know, and I forget what she said, and then she pulled back her hand and she started hitting me in the head with the gun, and I tried to fight back and she got the gun or her hand or something—I don't know which one got twisted in my hair and it kind of pulled me on the floor, and so I just quit fighting. I just decided it wasn't any use because it was too many of them anyway."

The gory details of what the evidence shows was then done to the prosecutrix will not be gone into fully. Suffice it to say that the appellant and Laurie Darby were shown to be the principal leaders of the various assaults and that appellant apparently held the gun on the prosecutrix during the entire episode. In summary, the evidence shows that the prosecutrix was stripped, beaten with a pistol, made to hit herself, had her hair cut off, was urinated upon, burned on the breast with a cigarette, had her head stuffed in a

commode, and had a beer bottle forced into her vagina. The prosecutrix was also forced to commit oral sodomy upon one or two of the women and a dog. After the assaults were concluded, appellant threatened the prosecutrix and told her to leave town and never return. The prosecutrix was then permitted to get in her car and drive away but was followed until she did in fact drive out of town.

■ Appellant contends that the state failed to prove that the prosecutrix was disgraced as the result of having her hair cut. Appellant points out that the prosecutrix never expressly testified that she felt a sense of disgrace or shame, or that having the hair cut caused a sense of disgrace or shame. We hold that the evidence clearly shows disgrace or shame. That prosecutrix was not asked the specific question whether such acts caused her to feel disgrace or shame does not alter our holding herein. Nevertheless, the record does show that the prosecutrix testified ". . . the things happened to me and I wouldn't go out of the house and I wouldn't be seen in public." And, in explaining why she did not report the event for two weeks, she stated: "I wouldn't go out of the house. I would not be seen in public." Even if we did require a holding of an expression from the prosecutrix, these quotations would suffice. Further, the showing of disgrace or shame is strengthened, under the facts of this case, by the disclosure in the record that the assault was committed in the presence of non-participating witnesses, including one man, and they were ". . . standing inside the room over this side laughing."

■ Finally, appellant contends that the trial court erred in charging the jury in the alternative on the instrumentality used to cut the victim's hair, when the indictment charged in the conjunctive. The indictment charged that the assault was committed by cutting the hair with a razor blade and a pair of scissors, whereas the court's charge said: "razor blade and/or a

pair of scissors." First, we note that no objection was addressed to the court's charge. Secondly, no error is shown by submitting a number of different means used to commit a crime. The verdict may be upheld upon proof of only one of the means alleged. Compare Shelton v. State, Tex.Cr.App., 441 S.W.2d 536. Also, the evidence shows that both a razor and a pair of scissors were used to cut the prosecutrix' hair.

There being no reversible error, the judgment is affirmed.